**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jasmine Leilani Finder, | No.  CV-25-03513-PHX-SHD (DMF) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| Frank Bisignano, Commissioner of Social Security Administration, | |
| Defendant. | |

**TO THE HONORABLE SHARAD H. DESAI, UNITED STATES DISTRICT JUDGE:**

This matter is on referral to the undersigned for further proceedings and a report and recommendation pursuant to 28 U.S.C. § 636(b)(1) and Rules 72.1 and 72.2 of the Local Rules of Civil Procedure (Doc. 9).[1]

At issue is the denial of Plaintiff's application for disability insurance benefits under the Social Security Act ("Act").  On September 24, 2025, Jasmine Leilani Finder ("Plaintiff" and/or "Finder") filed a Complaint with this Court through counsel (Doc. 1). In the Complaint, Plaintiff seeks review of the denial of benefits (*Id.*).  After careful review of the record, including Plaintiff's Opening Brief (Doc. 12), Defendant's Answering Brief (Doc. 16), Plaintiff's Reply Brief (Doc. 17), and the administrative record (Doc. 11

---

[1] Citation to the record as "Doc." indicates documents as displayed in the official Court electronic document filing system maintained by the District of Arizona under Case No. CV-25-03513-PHX-SHD (DMF).

hereafter, "R."), it is recommended that the final decision of the Commissioner of Social Security ("Commissioner") be vacated and that this matter be remanded to the Social Security Administration for further proceedings.

## I.    BACKGROUND

On September 13, 2022, Plaintiff filed an application for disability benefits under Title XVI of the Act (R. at 191-98).  Plaintiff's application was denied initially on February 21, 2023 (R. at 122-26) and upon reconsideration on November 30, 2023 (R. at 127-30). Plaintiff thereafter requested a hearing, which was held on July 9, 2024 (R. at 41).  On August 22, 2024, Administrative Law Judge ("ALJ") Carla Waters issued a decision finding Plaintiff not disabled (R. at 17-35).  On July 21, 2025, the Appeals Council denied Plaintiff's request for review, at which point the ALJ's August 22, 2024, decision became final (R. at 1-3).  Plaintiff thereafter filed a complaint initiating this matter (Doc. 1).

In the August 22, 2024, decision, the ALJ first considered the effect of Plaintiff's previously filed Title II and Title XVI applications in which an ALJ determined that Plaintiff was not disabled from April 1, 2019, through May 5, 2021 (R. at 17-18).  The ALJ determined that Plaintiff rebutted the presumption of continued non-disability due to the allegation of increased severity of Plaintiff's impairments and because the record included new material evidence warranting different findings of fact regarding Plaintiff's residual functional capacity ("RFC") (R. at 18).

After considering the evidence of record, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since the application date, September 13, 2022 (R. at 20).  The ALJ found that Plaintiff had the following severe impairments: depressive disorder; anxiety disorder; post-traumatic stress disorder (PTSD); attention deficit hyperactivity disorder (ADHD); personality disorder; obsessive compulsive disorder (OCD); autism spectrum disorder; postural tachycardia syndrome (POTS); and orthostatic hypotension (R. at 19-20).  The ALJ also determined that Plaintiff had several non-severe impairments (R. at 20-21).  The ALJ further found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the

listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (R. at 22-24).

In analyzing Plaintiff's RFC, the ALJ considered Plaintiff's symptom testimony as well as medical opinion testimony and prior administrative medical findings (R. at 24-33). The ALJ determined that Plaintiff's testimony regarding the intensity, persistence, and limiting effects of her symptoms was not entirely consistent with the evidence of record (R. at 30). The ALJ further considered the medical opinions and prior administrative medical findings from several of Plaintiff's treatment providers and agency medical consultants (R. at 30-33).

Ultimately, the ALJ concluded that Petitioner had the following RFC:

> [Plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except she can lift and carry 20 pounds occasionally and ten pounds frequently. She can stand and/or walk with normal breaks for four hours and sit with normal breaks for six hours in an eight-hour workday. She can frequently climb, balance, stoop, kneel, crouch, and crawl. She cannot have exposure to hazards such as moving machinery and unprotected heights. She is able to understand, remember, and carry out simple instructions and make simple work related decisions. She can have occasional contact with the public, coworkers, and supervisors with few changes in the work setting.

(R. at 24). The ALJ also found that Plaintiff had no past relevant work, Plaintiff was a younger individual on the date the application was filed, Plaintiff had at least a high school education, and that transferability of job skills was not an issue because Plaintiff had no past relevant work (R. at 33).

Plaintiff does not challenge any of the above findings of the ALJ (*see* Doc. 12 at 3-4).

After considering Plaintiff's age, education, work experience, and RFC, the ALJ concluded that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform (R. at 33-34). In making such determination, the ALJ relied the testimony of vocational expert Mark Kelman ("VE Kelman") who identified three occupations that Plaintiff could perform: Cashier II (Dictionary of Occupational Titles ("DOT") 211.462-010) with approximately 180,000 jobs nationally; Gate Guard (DOT

372.667-030) with approximately 100,000 jobs nationally; and Document Scanner (DOT 249.587-018) with approximately 30,000 jobs nationally (R. at 34; *see also* R. at 61-63). The ALJ found that VE Kelman's testimony was consistent with the information contained within the DOT (R. at 34). Accordingly, the ALJ determined that Plaintiff was capable of making a successful adjustment to other work that exists in significant numbers in the national economy (R. at 34). The ALJ concluded that Plaintiff was not under a disability as defined in the Act since the date the application was filed (R. at 34).

## II.    LEGAL FRAMEWORK

A district court reviews only the issues raised by the party challenging an ALJ's decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). If the court finds that the ALJ's decision was not based on substantial evidence or was based on legal error, the court may set aside the decision. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence requires "more than a mere scintilla but less than a preponderance" and should be enough evidence "as a reasonable mind might accept as adequate to support a conclusion." *Id*. (quoting *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005)). An ALJ's decision should be upheld if "evidence is susceptible to more than one rational interpretation," but a district court should "consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Id*. (quotations and citations omitted).

In determining whether a claimant is disabled under the Act, the ALJ must follow a five-step sequential evaluation process. 20 C.F.R. § 404.1520(a). First, the ALJ must determine whether a claimant is participating in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled. *Id*. Second, the ALJ determines if a claimant has a "severe medically determinable physical or mental impairment." 20 C.F.R. § 404.1520(a)(4)(ii). If not, the claimant is not disabled. *Id.* Third, the ALJ determines whether the claimant's impairment meets or equals a listing in Appendix 1 of Subpart P of 20 C.F.R. § 404. 20 C.F.R. § 404.1520(a)(4)(iii). If so, the ALJ will find the claimant disabled, and the inquiry ends. *Id*. If the ALJ must proceed to step four, the ALJ

determines whether the claimant's RFC allows the claimant to perform past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv).  If so, the claimant is not disabled.  *Id*.  If the ALJ must proceed to step five, the ALJ determines whether the claimant's RFC allows the claimant to perform other work.  20 C.F.R. § 404.1520(a)(4)(v).  If so, the claimant is not disabled. *Id*.  If not, the claimant is disabled.  *Id*.

## III.   ANALYSIS

### A.  Summary of the Parties' Positions

Plaintiff challenges the ALJ's determination with respect to step five of the sequential evaluation in which the ALJ determined that Plaintiff could make a successful adjustment to other work that exists in significant numbers in the national economy (Doc. 12 at 4-8; *see also* R. at 33-34).  Specifically, Plaintiff argues that the ALJ failed to identify and reconcile an apparent conflict between the DOT and VE Kelman's testimony that Plaintiff could perform occupations requiring Level 3 Reasoning (Doc. 12 at 4-8).  Plaintiff contends that each identified occupation—Cashier II, Gate Guard, and Document Scanner—requires Level 3 Reasoning, yet Plaintiff's limitation of understanding "simple instructions" and making "simple work related decisions" conflicts with the demands of Level 3 Reasoning (*Id.* at 6-7).

In support of her argument, Plaintiff cites *Zavalin v. Colvin*, 778 F.3d 842, 847 (9th Cir. 2015), for the proposition that "there is an apparent conflict between the residual functional capacity to perform simple, repetitive tasks, and the demands of Level 3 Reasoning" (*Id.* at 5).  Plaintiff reasons that her RFC limitation to understanding "simple instructions" and making "simple work related decisions" is "tantamount to a limitation to Level 2 Reasoning as defined in the DOT" (*Id.* at 6).  Accordingly, Plaintiff argues that the ALJ erred by failing to account for the apparent conflict between VE Kelman's testimony that Plaintiff could perform occupations requiring Level 3 Reasoning and Plaintiff's RFC limitation to essentially Level 2 Reasoning (*Id.* at 7).  For relief, Plaintiff asks the Court to remand this matter for further proceedings (*Id.* at 8).

In response, the Commissioner argues that substantial evidence supports the ALJ's

determination with respect to step five of the sequential evaluation (Doc. 16). The Commissioner insists that Plaintiff's education and work experience support that she could perform occupations requiring Level 3 Reasoning and that there was no conflict for the ALJ to resolve (*Id.* at 3). The Commissioner argues that *Zavalin* is distinguishable because the plaintiff in *Zavalin* was limited to routine and repetitive tasks but here Plaintiff "can understand, remember, and carry out simple instructions whether or not they are repetitive and routine" (*Id.* at 4-5). In support of his argument distinguishing *Zavalin*, the Commissioner cites two decisions from the District Court for the Central District of California: *Moore v. Colvin*, CV 13-3488-DFM, 2014 WL 696419, at n.3 (C.D. Cal. Feb. 24, 2014), and *Hite v. Colvin*, EDCV 13-1350-OP, 2014 WL 1364922, at *5 (C.D. Cal. April 7, 2014). The Commissioner also explains that the plaintiff in *Zavalin* graduated high school with a modified diploma, had a history of special education, and may have never worked; Plaintiff here has a high school education, did not attend special education classes, attended community college, and worked several jobs (*Id.* at 6). Thus, the Commissioner argues that the Ninth Circuit's holding in *Zavalin* does not control (*Id.* at 4).

The Commissioner acknowledges that an unpublished Ninth Circuit case "found a conflict between reasoning level three and the ability to 'understand, remember and carry out simple instructions'" (*Id.* at 5). *See Luchsinger v. Kijakazi*, No. 22-55599, 2023 WL 3735568, at *1 (9th Cir. May 31, 2023). However, the Commissioner states that *Luchsinger* is not controlling and any error here is harmless (*Id.*).

Regarding harmless error, the Commissioner cites several decisions of courts within the Ninth Circuit which held that an ALJ's error in failing to resolve a conflict was harmless because the plaintiff clearly retained the level of reasoning required for the identified occupations (*Id.* at 7). *See Shari B. v. Comm'r of Soc. Sec.*, No. 3:19-cv-6128-DWC, 2020 WL 4200969, at *2-3 (W. D. Wash. July 22, 2020) (error in not resolving DOT conflict was harmless because the claimant clearly retained the ability to perform reasoning level three jobs since she attended college and worked two jobs); *Timmons v. Berryhill*, No.

1:17-CV-00403-REB, 2019 WL 1283327, at \*6 (D. Idaho Mar. 19, 2019) (same); *Bryant v. Berryhill*, No. CV 16-04325 AJW, 2017 WL 1947426, at \*3-4 (C.D. Cal. May 9, 2017) (same); *Watkins v. Comm'r Soc. Sec. Admin.*, No. 6:15-c-01539-MA, 2016 WL 4445467 (D. Or. Aug. 22, 2016) (same). The Commissioner relies primarily on *Watkins* and reasons that Plaintiff could perform the occupations identified by VE Kelman which require Level 3 Reasoning because Plaintiff has a high school education, did not attend special education classes, attended community college, and worked several jobs (Doc. 16 at 8). Thus, the Commissioner argues any error is harmless and asks the Court to affirm the ALJ's August 22, 2024, decision (*Id.*).

In reply, Plaintiff asks the Court to reject the Commissioner's argument that Plaintiff retains the ability to perform work at Level 3 Reasoning because any past capability of Level 3 Reasoning does not mean that Plaintiff is similarly capable now (Doc. 17 at 2). Plaintiff notes that the ALJ found Plaintiff "was limited to carrying out simple instructions and making simple decisions," a finding that was "not modified by the Appeals Council" (*Id.*). Plaintiff argues that while her background is relevant it is not dispositive regarding Plaintiff's reasoning level (*Id.*). Thus, Plaintiff maintains that she does not retain the ability to perform work at Level 3 Reasoning and the ALJ's error is not harmless (*Id.* at 4).

Plaintiff also challenges the Commissioner's attempt to distinguish *Zavalin* (*Id.* at 3-4). Plaintiff argues:

> While it is true that the limitation in *Zavalin* was to "simple, routine, or repetitive tasks"—*see* 778 F.3d at 843—it is also clear that the operative word was "simple." The *Zavalin* opinion uses "routine" and "repetitive" interchangeably, and at times dispenses with both. *See id.* at 844 (noting that the hypothetical was that the claimant "can do simple jobs"), 846 (describing the limitation to "simple, routine tasks"); 847 (describing the limitation alternately as "simple, routine tasks" and "simple, repetitive tasks").
>
> More recently, in *Leach v. Kijakazi*, the Ninth Circuit confronted a situation where the claimant was limited to "short, simple instructions," but the hypothetical presented to the expert omitted the "short" modifier. 70 F.4th 1251, 1256 (9th Cir. 2023). In so finding, the Ninth Circuit reaffirmed that both level one and level two reasoning require "simple (or 'uninvolved')"

instructions." *Id.* "A level-two job . . . could require a an employee to follow lengthy simple instructions." *Id.* at 1257. The Ninth Circuit's discussion in *Leach* is extensively concerned with the operation of "simple," making virtually no mention of "routine" or "repetitive." *Id.* at 1256-57. This is at odds with the conclusion that *Zavalin* only applies to "simple" instructions that are also "routine" or "repetitive"—and thus Defendant's central argument must fail.

(Doc. 17 at 3-4).

### B. Vocational Expert Testimony That Plaintiff Could Perform Occupations Requiring Level 3 Reasoning

#### 1. Legal Standard

At step five, "the burden shifts to the Commissioner to show that the claimant can perform some other work that exists in 'significant numbers' in the national economy, taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999) (citing 20 CFR § 404.1560(b)(3)). "[T]he ALJ considers the applicant's background and residual functional capacity, that is, what physical tasks the applicant can still perform despite his or her limitations, to decide if the applicant can make an adjustment to some other available job." *Gutierrez v. Colvin*, 844 F.3d 804, 806 (9th Cir. 2016) (citing *Tackett*, 180 F.3d at 1100). If the claimant can make an adjustment to other work, the ALJ will find the claimant is not disabled; if the claimant cannot make an adjustment to other work, the ALJ will find that the claimant is disabled. 20 C.F.R. § 404.1520(e), (g).

The Commissioner may meet his burden at step five "(1) by the testimony of a vocational expert, or (2) by reference to the Medical–Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app. 2." *Maxwell v. Saul*, 971 F.3d 1128, 1130 (9th Cir. 2020) (quoting *Tackett*, 180 F.3d at 1099). The Medical–Vocational Guidelines (or "Guidelines") are a "short-hand method for determining the availability and numbers of suitable jobs for a claimant." *Id.* (quoting *Tackett*, 180 F.3d at 1101). The Guidelines categorize jobs by the required physical exertion levels with one table for each category: sedentary work, light work, and medium work. *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006);

*see also* 20 C.F.R. Part 404, Subpt. P, App. 2, § 200.00.  A combination of four factors—a claimant's age, education, previous work experience, and physical ability—direct a finding of either disabled or not disabled under the Guidelines.  *Lounsburry*, 468 F.3d at 1114-15.

However, a claimant's functional limitations may not be accurately and completely described by the Guidelines because they "are predicated on a claimant suffering from an impairment which manifests itself by limitations in meeting the strength requirements of jobs ('exertional limitations')" and "may not be fully applicable where the nature of a claimant's impairment does not result in such limitations ('non-exertional limitations')." *Id.* at 1115 (citations omitted).  For example, non-exertional limitations including postural and manipulative limitations such as difficulty reaching, handling, stooping, climbing, crawling, or crouching may "limit a claimant's functional capacity in ways not contemplated by the [Guidelines]." *Id.* (first citing 20 C.F.R. § 404.1569, and then citing *Tackett*, 180 F.3d at 1101-02).  Where a claimant suffers from both exertional and non-exertional limitations, the ALJ must first consult the Guidelines.  *Id.* (citing *Cooper v. Sullivan*, 880 F.2d 1152, 1155 (9th Cir. 1989)).  If the Guidelines direct a finding of disabled, the Commissioner must accept such finding.  *Id.* at 1115-16; *Cooper*, 880 F.2d at 1157.  If the Guidelines direct a finding of not disabled, the ALJ must separately examine the claimant's non-exertional limitations.  *Lounsburry*, 468 F.3d at 1116.

In cases where a claimant suffers from both exertional and non-exertional limitations and the Guidelines are not fully applicable, the Commissioner may meet his burden "by propounding to a vocational expert a hypothetical that reflects all the claimant's limitations." *Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir. 1995) (citing *Magallanes v. Bowen*, 881 F.2d 747, 756 (9th Cir. 1989)); *see also Moore v. Apfel*, 216 F.3d 864, 870 (9th Cir. 2000); *Tackett*, 180 F.3d at 1099.  For the testimony of a vocational expert to be considered reliable, "the hypothetical posed must include 'all of the claimant's functional limitations, both physical and mental' supported by the record." *Thomas v. Barnhart*, 278 F.3d 947, 956 (9th Cir. 2002) (quoting *Flores v. Shalala*, 49 F.3d 562, 570-71 (9th Cir.

1995)). Given a properly posed hypothetical, "a qualified vocational expert's testimony as to the number of jobs existing in the national economy that a claimant can perform is ordinarily sufficient by itself to support an ALJ's step-five finding." *Kilpatrick*, 35 F.4th at 1192 (citing *Ford v. Saul*, 950 F.3d 1141, 1160 (9th Cir. 2020)). An attorney's submission of contesting job numbers is not probative evidence if the attorney lacks expertise in determining the number of jobs existing in the national economy that a claimant can perform. *See Wischmann v. Kijakazi*, 68 F.4th 498, 506-07 (9th Cir. 2023) (concluding that an attorney's controverting job numbers were not probative because the attorney had no identified expertise in calculating job figures in the national economy); *Kilpatrick*, 35 F.4th at 1194 (same).

Regarding the reasoning level required for a given occupation, the DOT describes the "aspects of education (formal and informal) . . . required of the worker for satisfactory job performance." *Zavalin*, 778 F.3d at 846 (quoting DOT Appendix C § III, *available at* 1991 WL 688702). The reasoning levels correspond with "the reasoning ability required to perform the job, ranging from Level 1 (which requires the least reasoning ability) to Level 6 (which requires the most)." *Id.* (quoting DOT Appendix C § III).

The Ninth Circuit has long held that the DOT raises a rebuttable presumption as to job classification. *Johnson v. Shalala*, 60 F.3d 1428, 1435 (9th Cir. 1995). Accordingly, "an ALJ may rely on expert testimony which contradicts the DOT, but only insofar as the record contains persuasive evidence to support the deviation." *Id.* To that end, Social Security Ruling ("SSR") 00-4p[2] instructs:

> Occupational evidence provided by a VE or VS generally should be consistent with the occupational information supplied by the DOT. When there is an apparent unresolved conflict between VE or VS evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE or VS evidence to support a determination or

[2] The Court notes that SSR 00-4p has since been superseded by SSR 24-3p. *See* 2024 WL 4988840. However, SSR 24-3p has an applicable date of January 6, 2025, and the SSA explained that it would apply SSR 24-3p to "new applications filed on or after the applicable date of the SSR and to claims that are pending on or after the applicable date." SSR 24-3p, 2024 WL 4988840, at *97159 n.1. Therefore, SSR 24-3p does not apply to the August 22, 2024, decision of ALJ Waters.

decision about whether the claimant is disabled. At the hearings level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is such consistency.

Neither the DOT nor the VE or VS evidence automatically "trumps" when there is a conflict. The adjudicator must resolve the conflict by determining if the explanation given by the VE or VS is reasonable and provides a basis for relying on the VE or VS testimony rather than on the DOT information.

SSR 00-4p, 2000 WL 1898704, at *2.

In applying SSR 00-4p, the Ninth Circuit noted that the SSR went "one step further" than the court's holding in *Johnson*, 60 F.3d at 1435, by "explicitly requiring that the ALJ determine whether the expert's testimony deviates from the Dictionary of Occupational Titles and whether there is a reasonable explanation for any deviation." *Massachi v. Astrue*, 486 F.3d 1149, 1153 (9th Cir. 2007); *see also Kilpatrick v. Kijakazi*, 35 F.4th 1187, 1194-95 (9th Cir. 2022) (requiring an ALJ to identify and obtain reasonable explanation for any conflicts between VE testimony and the DOT before relying on the VE testimony); *Zavalin*, 778 F.3d at 846 ("The ALJ's failure to resolve an apparent inconsistency may leave us with a gap in the record that precludes us from determining whether the ALJ's decision is supported by substantial evidence."). Therefore, under SSR 00-4p, "[w]hen there is an apparent conflict between the vocational expert's testimony and the DOT—for example, expert testimony that a claimant can perform an occupation involving DOT requirements that appear more than the claimant can handle—the ALJ is required to reconcile the inconsistency." *Zavalin*, 778 F.3d at 846 (citing *Massachi*, 486 F.3d at 1153-54).

Nevertheless, a district court will not reverse the decision of an ALJ for an error that is harmless. *Burch*, 400 F.3d at 679. Error is harmless if it "was inconsequential to the ultimate nondisability determination." *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006) (citations omitted).

2. *VE Kelman's Testimony and the DOT*

Before issuing the August 22, 2024, decision, the ALJ heard testimony from VE Kelman in connection with Plaintiff's disability claim (*see generally* R. at 58-66). The

ALJ asked VE Kelman to consider the following hypothetical individual:

> This individual could lift and carry 20 pounds occasionally, 10 frequently, stand and/or walk with normal breaks for four hours, sit with normal breaks for six hours in an eight hour day.
>
> This individual could frequently climb, balance, stoop, kneel, crouch and crawl and should not have exposure to hazards such as moving machinery and unprotected heights but the individual would be able to understand, remember and carry out simple instructions, make simple work related decisions, have occasional contact with the public, coworkers and supervisors, with few changes to the work setting.

(R. at 61). When asked whether there would be any work that the hypothetical individual could do, VE Kelman answered in the affirmative and explained that such an individual could perform a range of sedentary to light work (R. at 61). VE Kelman specifically identified three occupations that Plaintiff could perform: Cashier II (DOT 211.462-010) with approximately 180,000 jobs nationally; Gate Guard (DOT 372.667-030) with approximately 100,000 jobs nationally; and Document Scanner (DOT 249.587-018) with approximately 30,000 jobs nationally (R. at 61-63).

According to the DOT, each of the jobs identified by VE Kelman requires Level 3 Reasoning. DOT §§ 211.462-010, 372.667-030, 249.587-018. The DOT further describes the requirements for Level 2 and Level 3 Reasoning as follows:

> LEVEL 2
>
> Apply commonsense understanding to carry out detailed but uninvolved written or oral instructions. Deal with problems involving a few concrete variables in or from standardized situations.
>
> LEVEL 3
>
> Apply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form. Deal with problems involving several concrete variables in or from standardized situations.

*Zavalin*, 778 F.3d at 847; *see also* DOT Appendix C § III.

- 12 -

### 3. *ALJ Waters' Findings*

The ALJ found that Plaintiff was capable of making a successful adjustment to other work that exists in significant numbers in the national economy (R. at 33-34). In doing so, the ALJ considered Plaintiff's RFC, age, education, and work experience in conjunction with the Medical–Vocational Guidelines as well as the testimony of VE Kelman (R. 3248-49).

The ALJ first considered whether Plaintiff's functional limitations were accurately and completely described by the Guidelines (R. at 33-34). The ALJ determined that "[i]f the claimant had the residual functional capacity to perform the full range of light work, a finding of 'not disabled' would be directed by Medical–Vocational Rule 202.20" (R. at 33). However, because Plaintiff's "ability to perform all or substantially all of the requirements of this level of work has been impeded by additional limitations," the ALJ continued by considering vocational expert testimony (R. at 33-34).

After considering VE Kelman's testimony, the ALJ found that the testimony was "consistent with the information contained in the DOT" (R. at 34). After discussing VE Kelman's testimony regarding the exertion and skill required for the enumerated occupations, the ALJ concluded that, "considering the claimant's age, education, work experience, and residual functional capacity, the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy" (R. at 34). Thus, the ALJ concluded that a finding of "not disabled" was appropriate at step five of the sequential evaluation (R. at 34).

### 4. *Discussion*

The parties' primary disagreement in this appeal is whether Plaintiff's RFC limitation "to understand, remember, and carry out simple instructions and make simple work related decisions" is inconsistent with the identified occupations which require Level 3 Reasoning as defined in the DOT. The Court concludes that an apparent conflict was presented.

The Commissioner attempts to dismiss the Ninth Circuit's holding in *Luchsinger*

- 13 -

and insists that the court's conclusion is not controlling (Doc. 16).  The Commissioner correctly identifies that *Luchsinger* is not precedential, yet the reasoning underpinning the Ninth Circuit's decision is sound and precisely on point here.  In *Luchsinger*, the ALJ determined that, among other things, the plaintiff's RFC allowed her to "understand, remember and carry out simple instructions." 2023 WL 3735568, at *1.  Nevertheless, the ALJ concluded that the plaintiff could perform occupations requiring Level 3 Reasoning. *Id.*  On appeal to the Ninth Circuit, the court explained that "Reasoning Level 2 requires that the claimant be able to 'carry out *detailed but uninvolved* written or oral instructions,' whereas Reasoning Level 3 requires that the claimant be able to 'carry out *instructions* furnished in written, oral, or *diagrammatic* form.'"  *Id.* at *3 (quoting DOT Appendix C § III).  "Because reasoning Level 3 omits any adjective modifying the term 'instructions,' it clearly lacks Level 2's express limitation to 'detailed but uninvolved' instructions.  Level 3 also requires an ability to follow 'diagrammatic' instructions, and not merely 'written or oral instructions.'"  *Id.*; *see also Leach v. Kijakazi*, 70 F.4th 1251, 1256 (9th Cir. 2023) (concluding that Level 1 or Level 2 "reasoning levels require simple (or 'uninvolved') instructions" (citation omitted)).  Thus, the Ninth Circuit concluded that the plaintiff's RFC to "understand, remember and carry out simple instructions" presented a conflict with vocational expert testimony that the plaintiff could perform an occupation requiring Level 3 Reasoning.  *Luchsinger*, 2023 WL 3735568, at *3.

This Court reaches the same conclusion.  Plaintiff's RFC limitation that she could "understand, remember, and carry out simple instructions and make simple work related decisions" presents a conflict with the requirement of Level 3 Reasoning as defined in the DOT.  Indeed, the Ninth Circuit's decision in *Zavalin* illustrates that the complexity of instructions is a primary issue in the analysis.  778 F.3d at 847.  In *Zavalin*, the Ninth Circuit reasoned that "[the plaintiff's] limitation to simple, routine tasks is at odds with Level 3's requirements because it may be difficult for a person limited to simple, repetitive tasks to follow instructions in diagrammatic form as such instructions can be abstract." *Id.* (citation and internal quotation marks omitted).  Thus, contrary to the Commissioner's

assertion that *Zavalin* applies only to simple and routine or repetitive tasks (*see* Doc. 16 at 4), a key reason for the Ninth Circuit's conclusion was the requirement to follow "abstract" instructions at Level 3 Reasoning. *Cf. Leach*, 70 F.4th at 1256 (concluding that Level 1 or Level 2 "reasoning levels require simple (or 'uninvolved') instructions" (citation omitted)). Put simply, Level 3 Reasoning's requirement to follow abstract instructions in diagrammatic form is inconsistent with an RFC limitation to simple instructions.

Moreover, the Court is not persuaded by the Commissioner's reliance on pre-*Zavalin* decisions of district courts in this circuit (*see* Doc. 16 at 4-5). As Plaintiff correctly points out (*see* Doc. 17 at 3), the cited cases "were decided the year before *Zavalin* was published, and therefore do not represent disagreement with the later-decided precedential case" (*Id.*). Indeed, both decisions acknowledge that the Ninth Circuit had not squarely addressed whether an RFC limitation to simple, routine, and repetitive tasks is inconsistent with an occupation requiring Level 3 Reasoning. *Hite*, 2014 WL 1364922, at *2; *Moore*, 2014 WL 696419, at *2.

Presented with an apparent conflict, the ALJ failed to identify and reconcile the inconsistency as the ALJ was required to do. *See Zavalin*, 778 F.3d at 846 ("When there is an apparent conflict between the vocational expert's testimony and the DOT—for example, expert testimony that a claimant can perform an occupation involving DOT requirements that appear more than the claimant can handle—the ALJ is required to reconcile the inconsistency." (citation omitted)); *Johnson v. Shalala*, 60 F.3d 1428, 1435 (9th Cir. 1995) ("[A]n ALJ may rely on expert testimony which contradicts the DOT, but only insofar as the record contains persuasive evidence to support the deviation."); *see also* SSR 00-4p, 2000 WL 1898704, at *2 ("The adjudicator must resolve the conflict by determining if the explanation given by the VE or VS is reasonable and provides a basis for relying on the VE or VS testimony rather than on the DOT information."). Further, the August 22, 2024, decision of the ALJ and the testimony of VE Kelman are devoid of any discussion regarding the level of reasoning required for the identified occupations or Plaintiff's reasoning capacity (*see* R. at 33-34, 58-66). Thus, the ALJ erred by failing to

identify and reconcile the apparent conflict between the vocational expert's testimony and the DOT.[3]

In short, the ALJ erred by finding that "the vocational expert's testimony is consistent with the information contained in the DOT" (R. at 34) and by failing to reconcile the apparent conflict.

Further, the Court concludes that the ALJ's error is not harmless. In arguing harmless error, the Commissioner primarily relies upon *Watkins v. Comm'r Soc. Sec. Admin.*, No. 6:15-c-01539-MA, 2016 WL 4445467 (D. Or. Aug. 22, 2016). The Commissioner argues:

> In *Watkins*, the claimant's RFC was limited to "simple work tasks," yet the court held substantial evidence showed the claimant could perform the DOT jobs of cashier, storage facility clerk, and order caller, with cashier and storage facility clerk requiring Level 3 reasoning skills. 2016 WL 4445467 at *5-*8. In coming to this determination, the court observed the claimant had obtained a GED, denied a history of special education classes in high school, and performed past relevant work as a carpenter, which was a Reasoning Level 4 job, and there was no evidence of diminished cognitive or reasoning abilities. *Id.* at *8. Plaintiff was similarly not enrolled in special education classes, graduated high school, attended college, and worked as a personal assistant, nanny, and seamstress, and there is similarly substantial evidence here to support that Plaintiff can perform the jobs of cashier II, gate guard, and document scanner. In sum, the facts here are distinguishable from those in *Zavalin*, and any error the ALJ may have made by failing to resolve an apparent conflict between the RFC and the challenged occupations is harmless.

(Doc. 16 at 7-8).

In *Watkins* the medical evidence presented established that the plaintiff was "mildly limited in understanding, remembering and carrying out simple instructions *and* complex instructions[.]" 2016 WL 4445467, at *8. The testifying doctor also described the plaintiff's limitations as "slight" but otherwise "Plaintiff generally could function well."

---

[3] As acknowledged by Plaintiff (Doc. 17 at 3), Plaintiff failed to raise this apparent conflict at the hearing. However, Plaintiff is correct that "[t]he duty to inquire about conflicts lies with the ALJ, whether or not the claimant is represented" (*Id.*). *See Lamear v. Berryhill*, 865 F.3d 1201, 1206 (9th Cir. 2017) ("[A] counsel's failure does not relieve the ALJ of his express duty to reconcile apparent conflicts through questioning[.]").

*Id.* Yet here, record medical evidence from Susan Katz, Psy.D, reflects that Plaintiff had "moderate limitations in understanding, remembering, and applying information" but "should be able to understand, remember, and carry out at least simple instructions" (R. at 31). Further, medical evidence from Dr. McMaster, Ph.D, described Plaintiff's limitations as "moderate" and found that Plaintiff was "capable of one to two step instructions for a normal workweek" (R. 31). The ALJ found the findings of Dr. Katz and Dr. McMaster to be "generally persuasive" (R. 31). The ALJ discussed, and the record appears to contain, no medical evidence establishing Plaintiff's ability to understand, remember, or carry out complex instructions. Thus, Plaintiff's "moderate" limitations here are likely more severe than the plaintiff's "mild" limitations in *Watkins*, providing the Court a persuasive reason not to follow *Watkins*.

Additionally, Plaintiff testified at the July 2024 hearing that she attended community college and recently completed a semester ending in May 2024 (R. 48-49). However, Plaintiff also testified that she "struggle[d] to keep up with assignments and just pay attention in class" (R. at 57). Plaintiff further stated that she received "accommodations through the disability office" and got "extensions on assignments" (R. at 57). According to Plaintiff, she also recieved "a copy of the teacher's notes and reports for classes and extra time on the tests" (R. at 57). Moreover, the Commissioner does not allege that Plaintiff ever worked a job requiring Level 4 Reasoning as did the plaintiff in *Watkins*. Rather, the jobs identified by the Commissioner—personal assistant, nanny, and seamstress—appear to require Level 2 or Level 3 Reasoning. DOT § 309.674-014 (Personal Attendant) (Level 2); DOT § 301.677-010 (Child Monitor) (Level 3); DOT § 785.361-010 (Dressmaker) (Level 3). Thus, Plaintiff's education and work background are distinguishable from the background of the plaintiff in *Watkins*, further providing the Court a persuasive reason not to follow *Watkins*.

On the record before the Court, Plaintiff appears to have moderate reasoning limitations. While Plaintiff attends community college, she experiences difficulties in understanding and performance even while receiving accommodations. Plaintiff also

appears never to have held a job requiring more than Level 3 Reasoning. The record medical evidence and evidence regarding Plaintiff's education and work background along with the ALJ's failure to inquire regarding the apparent conflict between VE Kelman's testimony and the DOT leave this Court with a gap in the record precluding the Court from determining whether the ALJ's step five finding was supported by substantial evidence. Thus, the Court concludes that the error was not inconsequential to the ultimate non-disability determination and such error is not harmless.

## IV.    CONCLUSION

The ALJ failed to identify the apparent conflict regarding the vocational expert's testimony that Plaintiff could perform occupations requiring Level 3 Reasoning; this error is not harmless. It is therefore recommended that the final decision of the Commissioner (R. at 17-35) be vacated and that this matter be remanded to the Social Security Administration for further administrative proceedings.

Accordingly,

**IT IS RECOMMENDED** that the final decision of the Commissioner (R. at 17-35) be vacated.

**IT IS FURTHER RECOMMENDED** that this case be remanded to the Social Security Administration for further administrative proceedings.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of the District Court's judgment. The parties shall have fourteen days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6, 72. The parties shall have fourteen days within which to file responses to any objections. Failure to file timely objections to the Magistrate Judge's Report and Recommendation may result in the acceptance of the Report and Recommendation by the District Court without further review. *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003). Failure to file timely objections to any factual

determination of the Magistrate Judge may be considered a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation. *See* Fed. R. Civ. P. 72.  In addition, LRCiv 7.2(e)(3) provides that "[u]nless otherwise permitted by the Court, an objection to a Report and Recommendation issued by a Magistrate Judge shall not exceed ten (10) pages."

Dated this 17th day of March, 2026.

_____
Honorable Deborah M. Fine
United States Magistrate Judge